Roger M. BROOKS and Jean K. Brooks, Appellants,

v.

BLUE RIDGE INSURANCE COMPANY, Appellee.

No. 07–82–0335–CV.

Court of Appeals of Texas, Amarillo.

Aug. 15, 1984.

Rehearing Denied Sept. 11, 1984.

R. A. Wilson, Amarillo, for appellee.

Cary Schachter, Theresa Collier, Amarillo, for appellants.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Roger M. Brooks and his wife, Jean K. Brooks, are aggrieved by a take-nothing judgment rendered on a jury verdict in their action to hold Blue Ridge Insurance Company liable under its policy of insurance for the fire loss of their furniture and other personal property. Because we conclude that on the theories litigated, the Brooks failed to establish their right to recover as named insureds, but they were wrongfully denied a proper submission of the theory that their lost personalty was insured under the policy's unscheduled personal property provision, we affirm in part and reverse and remand in part.

The Brooks owned a home in Amarillo covered by a standard homeowners policy of insurance issued by Blue Ridge. The policy provided coverage of unscheduled personal property in this language:

COVERAGE B—UNSCHEDULED PERSONAL PROPERTY owned, worn or used by the Insured, including members of his family of the same household and, at the option of the Insured, property of others (except roomers or tenants) while on the premises of the described dwelling.

The policy remained in force at all times during the occurrences giving rise to the Brooks' alleged causes of action.

The Brooks contracted to sell their home to Dr. and Mrs. Boyd. The contract provided for the Boyds' assumption of the existing property loan, proration of insurance to the date of closing, and delivery of possession to the Boyds on 16 December 1977.

The sale was closed on 15 December 1977. On that date, title to the property was conveyed to the Boyds by the Brooks' execution of a warranty deed in which it is recited that they "do hereby transfer and assign to the [Boyds] ... all insurance policies now owned by us or held for our account by the holder of the above described note [evidencing the assumed existing property loan]." At the same time, Mr. Brooks testified, the Brooks signed an undated form authorizing the holder of the note "to transfer the insurance policy or policies held with said loan to the said buyer [the Boyds] together with all funds now in the reserve for ... insurance premiums ...."

Ordinarily, the Brooks' delivery of their deed would have given possession of the premises to the Boyds, *Huddleston v. Fergeson,* 564 S.W.2d 448, 453 (Tex.Civ. App.—Amarillo 1978, no writ); however, to permit Mr. Brooks to make arrangements to move the contents of the home, the Brooks and the Boyds agreed in writing sometime prior to closing that, among other things,

Possession will be extended to not later than December 23, 1977. Seller [the Brooks] will be charged $13.36 daily from December 16, 1977 daily (*sic*) to posession (*sic*) date when Sellers are moved out of the house. The money for the repairs and the rent will be held in escrow by the title company and paid to the Boyd's (*sic*) when they possess.

Following the December 15 closing, the Brooks' furniture and other personal property remained in the house, keys to·which were possessed by both the Brooks and the Boyds.

Two days later in the early morning of Saturday, December 17, the house and the Brooks' personal property situated therein were destroyed by fire. On the following Monday, December 19, the agent issuing Blue Ridge's policy of insurance, with knowledge of the fire, formally assigned the policy to the Boyds, showing December 16 as the effective date.

Blue Ridge denied the Brooks' claim made under the policy for their loss. The denial was grounded on the assertion that the policy was not in effect as to the Brooks when the fire occurred.

Then, the Brooks instituted suit against Blue Ridge and its agent. They sought to recover from Blue Ridge as insureds under the policy, alternatively alleging other theories of recovery, one of which was under Coverage B. Alternatively, the Brooks alleged that if their loss was not covered by the policy, the agent was liable to them on the theory of negligence.

Blue Ridge and its agent separately answered with denials and defenses. Blue Ridge specifically pleaded that the Brooks had assigned all interests in the policy and were no longer assured under the policy at the date of the fire, and that their personal property was excluded from coverage under Coverage B because they were the tenants of the Boyds.

Subsequently, the Brooks moved for a partial summary judgment on the issue of liability. Blue Ridge and its agent separately moved for summary judgment on the entire cause. The trial court denied the Brooks' motion, granted the motions of Blue Ridge and its agent, and summarily rendered judgment that the Brooks take nothing. The Brooks appealed.

On appeal, we affirmed that portion of the judgment decreeing that the Brooks

take nothing from the agent, but we reversed that portion of the judgment decreeing that the Brooks take nothing from Blue Ridge and remanded that action to the trial court. *Brooks v. Blue Ridge Insurance Company*, et al., No. 9288 (Tex.App.—Amarillo, Oct. 30, 1981, no writ). In our unpublished opinion, we held that Blue Ridge failed to prove its entitlement to summary judgment because it did not establish conclusively each element of the tenancy exception it relied upon since it had not proved that the Brooks had the right to exclusive possession of the property, "[o]ne of the 'constituting and essential elements of tenancy' ...." *Id.* at p. 5. Our judgment, from which no appeal was taken, became final.

After the reversal and remand, the Brooks amended their petition to seek recovery from Blue Ridge on the theory that their "personal property [situated in the residence and destroyed by fire] was insured under the policy [issued by Blue Ridge]." Upon a jury trial on the pleadings, the Brooks again suffered a take-nothing judgment. The judgment was rendered when the jury, answering the three numbered special issues submitted, found (1) that before the fire, the Brooks had transferred the ownership of the policy of insurance to the Boyds, (2) that at the time of the fire, the Brooks were tenants of the Boyds, and (3) that $23,600 was the pecuniary loss or damage caused by the fire to the Brooks' property. The Brooks again have appealed.

Before the jury submission, the Brooks moved unsuccessfully for an instructed verdict on the ground that Blue Ridge had failed to establish an assignment of the unscheduled personal property coverage, and they objected ineffectively to the submission of the first special issue because "it speaks of transfer the (*sic*) ownership of the policy of insurance when in fact it should be the transfer of the ownership of the unscheduled personal property covered." In connection with the objection, the Brooks contended to the court "that there are two severable coverages and there

must be a transfer that is clearly (*sic*) as to both in order to be valid."

In presenting their appeal in relation to these matters, the Brooks have not complained by point of error of the submission of the first special issue, nor of the evidential support for the jury's finding thereon, nor of the refusal of the court to separately inquire about the transfer of the ownership of the unscheduled personal property coverage. Nor have they asserted by a point of error that the evidence conclusively establishes that they did not transfer or assign the Coverage B insurance. Instead, the Brooks drafted the fourth of their five points of error in this language:

Because the evidence was factually and legally insufficient to establish that plaintiffs [the Brooks] assigned their unscheduled personal property insurance, the court erred in failing to grant an instructed verdict and in submitting Special Issue No. 1 to the jury, and in entering judgment based upon the jury's finding in Special Issue No. 1.

And they contend, by their fifth point, that the court erred in excluding the proffered testimony by Mr. Brooks, which was preserved by bill of exception, that he did not intend to assign the unscheduled personal property coverage for their personal property located in the house.

■ A study of the record leads us to the conclusion that we are not authorized to consider whether the points have merit. The fourth point, although appearing at first light to be a multifarious one of ambiguous nature and offering sundry contentions of error, is in actuality, when measured by the development of it under the criterion of *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976), an insufficient evidence point of error. This nature of the point obtains from a critical reading of the point itself and the argument thereunder by the Brooks, who, reciting some record evidence of the transfer and assignment of the policy of insurance, submit with references to authorities speaking to factually insufficient. evidence contentions that the evidence is too meager to create a

valid assignment of their insurable interest in the coverage for their unscheduled personal property destroyed by fire.

It is to be noticed that the Brooks' trial theories of recovery, advanced via their general pleadings that their destroyed personal property was insured under the policy, which Blue Ridge pleaded had been assigned before the fire and otherwise furnished no insurance to the personalty, were these: (1) they were the named insureds under Coverage B since they had not intended to, and did not, assign that coverage, or (2) if they had assigned the policy coverage, their personal property still was insured, with the consent of the Boyds, under Coverage B. As previously mentioned, the Brooks did object to the submission of the first special issue because it did not submit their theory of recovery as insureds. However, although their objection was in the approved manner of pointing out distinctly the claimed vice in the issue and the ground of the objection, *Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 924 (Tex.1983), the objection, as also previously mentioned, has not been, as it is required to be, preserved for review by a proper point of error. *Isenhower v. Bell*, 365 S.W.2d 354, 358 (Tex.1963). Moreover, as earlier noted, the question of the evidential support for the jury's finding in response to the issue has not been challenged by a point of error, which is required to place the question before us. *Ware v. Paxton*, 359 S.W.2d 897, 898 (Tex.1962). Consequently, the trial court's overruling of the objection, if error, has not been preserved for our consideration, *State Farm Mutual Automobile Ins. Co. v. Cowley*, 468 S.W.2d 353, 354 (Tex.1971), and we must accept as conclusive the unchallenged finding that the Brooks transferred the ownership of the insurance policy, which contained the Coverage B insurance, to the Boyds before the fire. *Adams v. American Quarter Horse Ass'n*, 583 S.W.2d 828, 833 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

By their fourth point, the Brooks, rather than taking exception to the trial court's submission and the jury's adverse determination of the theory of recovery as insureds under the policy itself, are attempting to overturn the take-nothing judgment by attacking the factual sufficiency of the evidence to support a nonexistent finding on their unsubmitted theory of recovery as insureds only under the Coverage B insurance included in the policy established to have been transferred by them before the fire. However, the point is not grounded on a proper predicate, which is necessary for a consideration of it, *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887, 889 (1960), for in the absence of a point of error preserving a proper objection for the trial of the cause on the theory of recovery upon which the fourth point is based, the Brooks may not urge the theory for the first time on appeal. *State of Cal. Dept. of M. Hyg. v. Bank of S.W. Nat. Ass'n*, 163 Tex. 314, 354 S.W.2d 576, 581 (1962). It follows that in the exercise of our appellate jurisdiction, we are not authorized to entertain the theory of recovery not passed upon by the trial court. *State v. J.M. Huber Corporation*, 145 Tex. 517, 199 S.W.2d 501, 502 (1947).

■ As a result, the Brooks' related fifth-point contention that the trial court erred in excluding Mr. Brook's proffered testimony that he did not intend to assign the Schedule B coverage is immaterial to a viable issue on appeal, and it may be overruled without being addressed. *Reed v. Buck*, 370 S.W.2d 867, 874 (Tex.1963). Points of error four and five are overruled.

In reference to the Brooks' theory that their destroyed personal property was insured, with the Boyds' consent, under Coverage B, the trial court submitted special issue no. 2 in these words:

> At the time of the fire were Mr. and Mrs. Brooks tenants of Dr. and Mrs. Boyd with respect to the residence at #2 Manchester?

Calling upon the jury for a "Yes" or "No" answer, the court instructed as follows:

> If from a preponderance of the evidence you find that Mr. and Mrs. Brooks were not tenants, then this issue should

be answered "No;" otherwise it should be answered "Yes."

Then, the court informed the jury that:

You are instructed that a tenant, as that term is used in this issue, is one, not the owner of the property, who by agreement, oral or written, remains in possession by consent of the owner and in recognition of the owner's title.

The jury gave a "Yes" answer to the issue, which formed the basis for the rejection of this theory of recovery in the take-nothing judgment rendered.

On appeal, the Brooks' first three points or error convey their various contentions of error in the rejection of their theory of recovery for their destroyed personal property under the Boyds' Coverage B insurance. We first notice their second point.

By this point, the Brooks contend that the court erred in overruling their objection to special issue no. 2 for wrongfully placing on them the burden to prove they were not tenants. In developing their contention, the Brooks focus only on the burden of proof; they do not question the wording of the issue or the instructions and, in resolving the contention, we do not give any attention to the language used in the submission.

■ The only personal property insurance afforded by the policy is Coverage B. Under the umbrella of their general pleadings, the Brooks sought to show that their destroyed personal property was insured as, and within the Coverage B terms of, the "property of others (except roomers and tenants) ...." When they declared on the policy, the Brooks were not required to allege that their loss did not come within any of the exceptions specified in the policy, Rule 94, Texas Rules of Civil Procedure; but, when Blue Ridge answered that their personal property was excluded from the Coverage B insurance because they were the tenants of the Boyds, it became the burden of the Brooks to negate the pleaded policy exception. *Sherman v. Provident American Insurance Company*, 421 S.W.2d 652, 654 (Tex.1967).

The Brooks acknowledge the *Sherman* holding, but they argue, without any citation of authority to support the argument, that the holding, being applied in *Sherman* and by its progeny to specifically pleaded exclusions separately listed and designated in policies of insurance, does not apply to Coverage B's mere words of qualification within the description of coverage provided by the insurance contract. The argument is not persuasive.

■ By the plain language of Coverage B, the property of roomers and tenants in the dwelling is excepted from the insurance coverage provided for personal property, and it was this exception to liability that Blue Ridge pleaded. Blue Ridge was entitled to plead the exception to general liability, Rule 94, *supra*, to raise the issue of insurance coverage. *Hardware Dealers Mut. Insurance Co. v. Berglund*, 393 S.W.2d 309, 311 (Tex.1965). Once the issue was raised, then the Brooks had the burden, even before the *Sherman* decision, to prove that their right to recover was not defeated by the pleaded policy exception to liability. *Shaver v. National Title & Abstract Co.*, 361 S.W.2d 867, 869 (Tex.1962). The second point is overruled.

Prior to the jury submission, the Brooks objected to the aforementioned instruction accompanying special issue no. 2 for the reason that it failed to include the element of exclusive possession which, so we held on the former appeal, was one of the constituting and essential elements of tenancy. The court overruled the objection, whereupon the Brooks tendered for submission a substitute instruction and then a substitute special issue containing the element of exclusive possession, which the court denied. These actions, among others, by the court are attacked by the Brooks in their first point of error.

■ The word "tenant" is not defined in the insurance policy; therefore, the meaning of that term contained in the exception to insurance coverage is a question of law for the court. *Providence Washington Ins. Co. v. Proffitt*, 150 Tex. 207, 239 S.W.2d 379, 381 (1951). The question

of law was decided when we initially determined on the prior appeal that one of the elements necessary and essential to constitute the tenancy is exclusive possession. Our decision became final, thereby establishing the law to govern this cause throughout its subsequent stages of retrial and appeal. *Trevino v. Turcotte*, 564 S.W.2d 682, 685 (Tex.1978). Therefore, the trial court, by ignoring our decision on the law in the retrial of the cause, reversibly erred, unless we, in the exercise of our discretion, consider upon this appeal that our decision was erroneous. *Id.; Kempner v. Huddleston*, 90 Tex. 182, 37 S.W. 1066, 1066–67 (1896); *Bomar v. Parker*, 68 Tex. 435, 4 S.W. 599, 606 (1887).

■ In this regard, Blue Ridge does not claim that our decision was erroneous; rather, it submits that because the question presented on the prior appeal related to the propriety of summary judgment, the law of the case has no place in this appeal. We cannot agree, for a decision on the question of law was necessary for a proper disposition of an issue on the former appeal and the decision, unless erroneous, governed the submission of the same issue remaining in the cause by the pleadings and the evidence on the retrial.

Normally, we would adhere to our former decision without reconsidering it in the absence of a challenge to its correctness; however, since the trial court refused to follow it, we have undertaken to reconsider the question. Upon the reconsideration, we adhere to our former decision, considering that it was, and still is, correct.

Originally reflecting on the question, we noticed that the term "tenants" was neither defined nor otherwise explained in the policy to denote the relationship contemplated between the parties. It long has been the law that unless another relationship is expressed in a valid leasing, the tenant is vested with exclusive possession of the leased premises. *Brown v. Johnson*, 118 Tex. 143, 12 S.W.2d 543, 545 (1929). It logically follows that "[t]he right of exclusive possession is one of the constituting and essential elements of tenancy."

*Mallam v. Trans-Texas Airways*, 227 S.W.2d 344, 346 (Tex.Civ.App.—El Paso 1949, no writ). Indeed, in conformity with the law and our prior decision, the Legislature, in enacting the Texas Property Code effective 1 January 1984, has defined a "tenant" to mean "a person who is authorized by a lease to occupy a dwelling to the exclusion of others ...." Property Code, ch. 576, § 92.001(6), 1983 Tex.Gen.Laws 3630.

■ We conclude, then, that the court erred in refusing to include the element of exclusive possession in the submission of the Brooks' theory that their personalty was insured under Coverage B. As a consequence, the court's special issue no. 2 instruction was incorrect and, resultantly, we sustain subparts A, B, and D of the Brooks' first point of error which present the error.

The error amounts to reversible error, since an explanatory instruction that misstates the law cannot be expected to produce a correct verdict, *Line Enterprises v. Hooks & Matteson*, 659 S.W.2d 113, 117 (Tex.App.—Amarillo 1983, no writ), unless it can be said that, as the Brooks contend in subpart C of their first point, there is no evidence of exclusive possession, or that, as Blue Ridge responds, the evidence conclusively establishes the Brooks' exclusive possession. We do not subscribe to either view under the evidence adduced.

It suffices to state in summary that at the closing, both the Brooks and the Boyds had keys to the dwelling, although neither couple lived in it after the closing. The written agreement provided that possession, which then was in the Brooks exclusively, will be extended for a time; however, the purpose of the extension was to permit arrangements for the removal of the Brooks personalty, and Mr. Brooks testified that the Boyds, who could have entered the property "anytime they wanted to," were going to admit the movers to pick up the furniture. With the evidence in this condition, the question of exclusive possession was not answered conclusively; it remained only an issue of fact for the jury's

resolution, *Byrd v. Feilding,* 238 S.W.2d 614, 616 (Tex.Civ.App.—Amarillo 1951, no writ), upon a correct submission. Consequently, we overrule subpart C of the first point.

The single undetermined facet of the Brooks' remaining point of error, point three, is their contention that the jury's failure to find they were not tenants is against the great weight and preponderance of the evidence. We pretermit a discussion, for the disposition we make of this appeal will not be altered by our either sustaining or overruling the point. *Furr v. Hall,* 553 S.W.2d 666, 675 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

What we have written manifests that the Brooks have not presented any preserved error which would vitiate the take-nothing judgment on their theory of recovery as named insureds in the policy, but that they have demonstrated reversible error in the take-nothing decree with respect to their theory of recovery under the Boyds' Coverage B in the policy. The judgment rendered is a take-nothing adjudication of the two theories of recovery, *i.e.,* the two causes of action, that are clearly separable without unfairness to the litigants. Tex.R. Civ.Pro. 434. *Accord, Westchester Fire Ins. Co. v. English,* 543 S.W.2d 407, 415 (Tex.Civ.App.—Waco 1976, no writ).

Accordingly, insofar as the judgment decrees that the Brooks take nothing on their theory of recovery as named insureds in the policy, it is affirmed; but, insofar as the judgment decrees that the Brooks take nothing on their theory, *i.e.,* cause of action, for recovery under the Boyds' Coverage B, the cause of action is severed, the judgment is reversed, and the cause is remanded to the trial court.

Costs of this appeal are assessed one-half to Roger M. Brooks and his wife, Jean K. Brooks, and one-half to Blue Ridge Insurance Company. Tex.R.Civ.Pro. 448.

### ON MOTIONS FOR REHEARING

Both the Brooks and Blue Ridge Insurance Company have filed respective motions for rehearing. A consideration of the motions does not persuade us to change our original judgment. Neither are we persuaded to write further upon the reurged contentions we previously addressed other than in correction of one matter mentioned in our original opinion.

In the eleventh paragraph of our opinion, we stated that no appeal was taken from our former judgment by which we reversed the trial court's prior summary judgment and remanded the cause. By its motion, Blue Ridge accurately reports that each of the parties filed in the Supreme Court a separate application for writ of error, both of which were "refused, no reversible error," 25 Tex.Sup.Ct.J. 204 (Mar. 6, 1982), and that, thereafter, Blue Ridge's motion for rehearing of its application was overruled. 25 Tex.Sup.Ct.J. 244 (Apr. 3, 1982). In the interest of accuracy, we make this correction to our original opinion; however, in this connection, we cannot subscribe to Blue Ridge's argument that our misunderstanding of the writ history undermines our reasoning for the "law of the case" holding.

The misstated writ history does not affect the reality that the first appeal from the summary judgment was determined solely by a decision on the question of law which remained material to, but was not honored upon, the submission of a controlling issue in the retrial giving rise to this appeal. It was on that basis that we held, and now adhere to the holding, that our former decision established the law to govern the retrial of the cause. It followed, and still follows, that the trial court's refusal to follow that law constituted reversible error.

The motions for rehearing are overruled.